**Benjamin TERRY, Appellant,**

v.

**George PETSOCK, Superintendent, Ernest Preate, Attorney General of the Commonwealth of Pennsylvania, District Attorney of Montgomery County.**

**No. 91–9000.**

United States Court of Appeals, Third Circuit.

Argued April 8, 1992.

Decided Sept. 1, 1992.

Order on Denial of Rehearing Sept. 28, 1992.

**373**

Mary MacNeil Killinger (argued), Executive Asst. Dist. Atty., Chief, Appellate Div., Montgomery County Dist. Atty., Norristown, Pa., for appellees.

Before: STAPLETON, NYGAARD and ALITO, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

This is an appeal from the denial of a writ of habeas corpus in a Pennsylvania capital case. The petitioner, Benjamin Terry, raises one argument, namely, that his conviction for first-degree murder must be reversed under *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), because at his second trial, the judge, applying Pennsylvania Supreme Court precedent, did not instruct the jury on the lesser-included offense of third-degree murder. We reject this argument.

In *Beck v. Alabama*, the jury was instructed on capital murder, but an unusual state law prohibited instructions on any lesser-included offenses, even if they were supported by the evidence. As a result, the jury was forced to choose between returning a guilty verdict for the capital offense or setting the defendant free. The Supreme Court held that this all-or-nothing scheme was unconstitutional because it impermissibly enhanced the risk of an unwarranted conviction for the capital offense.

In this case, as we explain in greater detail below, no such risk was created. The jury was not required to choose between convicting Terry for a capital offense or setting him free. On the contrary, the jury could have found Terry not guilty of the capital offense but guilty of other serious offenses, including one carrying a mandatory penalty of life imprisonment. In addition, the jury knew that even if it acquitted Terry on all charges, he would still be returned to prison to continue serving a previously imposed term of life imprisonment. We therefore hold that the reasoning of *Beck v. Alabama* and related cases does not apply to this case, and we affirm the district court.

David Rudovsky (argued), Kairys & Rudovsky, Philadelphia, Pa. (Court–Appointed) for appellant.

## I.

At the time of the murder in question, Terry was an inmate at Graterford State Prison. He was serving three concurrent life sentences for three first-degree murders, as well as a concurrent 10 to 20 year sentence for arson. *See Commonwealth v. Terry*, 462 Pa. 595, 342 A.2d 92 (1975). On March 20, 1979, Terry told fellow inmates that he was planning to kill a prison guard. In addition, Terry stated in his confession that he had "scout[ed] around inside the institution for someone to kill." App. at 271.

On March 29, as Terry was coming in from the exercise yard, he picked up a softball bat and hid it under his prison overcoat. Captain Felix Mokychic was checking the passes of the prisoners returning to C block from the exercise period. When Terry did not produce a pass needed to enter C block, Captain Mokychic gave him a slight push to the side of the doorway and turned his back in order to continue checking passes. Terry then pulled out the bat, swung the bat as if hitting a baseball, and struck Captain Mokychic in the back left side of the head.

Captain Mokychic immediately fell to the ground, and Terry continued striking him with the bat. Witnesses heard Terry say words to the effect "I'll kill you; I'll kill you." App. at 99. According to Terry's confession, he periodically checked to see whether Captain Mokychic was still breathing and then hit him some more. *Id.* at 271–72. An autopsy subsequently revealed that "[t]he entire top of the [victim's] head [had been] reduced to tiny, little fragments of bone." *Id.* at 132.

Terry was first tried in November 1979. The jury initially returned verdicts of guilty for first-degree murder and volun-tary manslaughter but not guilty for third-degree murder.[1] The trial judge then instructed the jury that they could return a verdict of guilty on only one homicide charge, and after further deliberations the jury returned a verdict of guilty on first-degree murder and not guilty of both third-degree murder and manslaughter. Terry was then sentenced to death. On appeal, the Pennsylvania Supreme Court reversed Terry's conviction, holding that the trial judge had violated Pa.R.Crim.P. 1114 by permitting a written copy of Terry's confession to be taken to the jury room. *Commonwealth v. Terry*, 501 Pa. 626, 462 A.2d 676 (1983).

Before Terry could be retried, the Pennsylvania Supreme Court handed down another decision, *Commonwealth v. Beck*, 502 Pa. 78, 464 A.2d 316 (1983), that led to the issue raised in this appeal. In *Commonwealth v. Beck*, the jury in the defendant's first trial found him guilty of third-degree murder but not guilty of the lesser-included offense of voluntary manslaughter. After the Pennsylvania Supreme Court reversed the conviction, the defendant was retried for both of these offenses and was found guilty of voluntary manslaughter. The Pennsylvania Supreme Court then reversed the voluntary manslaughter conviction, citing state and federal principles of double jeopardy. The majority reasoned that the defendant had been acquitted for voluntary manslaughter at the first trial and that this barred his retrial for that offense. *Id.* at 80–82, 464 A.2d at 317–18. The majority also held that the defendant could not waive the protection against double jeopardy and that defense counsel's failure to object to the retrial for voluntary manslaughter was therefore inconsequential.[2] *Id.* at 83, 464 A.2d at 318.

---

1. Under Pennsylvania law, a criminal homicide constitutes first-degree murder when it is intentional. 18 Pa.Cons.Stat.Ann. § 2502(a). See *Rock v. Zimmerman*, 959 F.2d 1237, 1244–45 (3d Cir.1992). Second-degree murder is felony murder. 18 Pa.Cons.Stat.Ann. § 2502(b). All other kinds of murder are third-degree murder. *Id.* at § 2502(c). Voluntary manslaughter is an unjustified killing by a person "acting under a sudden and intense passion resulting from seri-

ous provocation" by the actual or intended victim. *Id.* at § 2503(a).

2. Three justices dissented. Then–Justice Nix wrote that the defendant had waived the double jeopardy issue and that in any event the jury's initial verdict on voluntary manslaughter did not represent a real acquittal but instead "represented an expression by the jury that the evidence reflected an even higher degree of culpa-

In light of this decision, when Terry's case was remanded, the prosecution moved to preclude jury instructions on the lesser-included homicide offenses on which the jury had returned not guilty verdicts at the first trial. Defense counsel was understandably perplexed by this situation. On the one hand, he observed that it "obviously ... behooves me to have lesser-included offenses go to this jury" (Pretrial Motion Hearing of January 13, 1984 Transcript at 57), and he stated that he had considered trying to waive double jeopardy in order to get such instructions (*id.* at 65–66). Ultimately, however, he did not press for such instructions but argued that *Commonwealth v. Beck* and *Beck v. Alabama*, taken together, precluded the prosecution from seeking the death penalty. *Id.* at 58–59. Alternatively, he argued that the court should instruct the jury on the lesser-included homicide offenses but that, if the jury found Terry guilty of anything less than first-degree murder, the court would have to "arrest judgment." *Id.* at 65.

The trial judge did not accept these defense suggestions but instead granted the prosecution's motion and did not instruct the jury on any lesser-included homicide offenses. The court instructed the jury on first-degree murder (18 Pa.Cons.Stat.Ann. § 2502(a)), assault by a life prisoner (*id.* at § 2704), aggravated assault (*id.* at § 2702), and recklessly endangering another person (*id.* at § 2705). The offense of assault by a life prisoner, which carries a mandatory penalty of life imprisonment (*id.* at §§ 1102(b), 2704), required the prosecution to introduce evidence that Terry was already serving an uncommuted life sentence when he killed Captain Mokychic, and the prosecution introduced such proof. The prosecution also introduced admissions by Terry that he expected to remain in prison "forever" (App. at 316), and a psychiatrist testifying for the defense told the jury that "when [Terry] was 19 he was convicted of a fire bombing which resulted in death and was sentenced to life imprisonment." *Id.* at 741.

The defense attempted to show by psychiatric and other evidence that Terry lacked the intent to kill needed for first-degree murder, but the jury found Terry guilty of all charges.

At the penalty phase, the prosecution sought to prove three aggravating circumstances: first, that Captain Mokychic was a "public servant concerned in official detention ... who was killed in the performance of his duties" (42 Pa.Cons.Stat.Ann. § 9711(d)(1)); second, that Terry had been convicted of prior offenses for which he was serving a sentence of life imprisonment at the time of the killing of Captain Mokychic (*id.* at § 9711(d)(10)); and third, that Terry had "a significant history of felony convictions involving the use or threat of violence to the person" (*id.* at § 9711(d)(9)). To prove these aggravating circumstances, the prosecution introduced evidence that Terry had been convicted for a firebombing that caused three deaths and that he had been sentenced to three concurrent terms of life imprisonment and a concurrent term of 10 to 20 years' imprisonment. In addition, the prosecution introduced evidence that Captain Mokychic was performing his official duties when he was killed. Apparently the only possibly significant new facts brought out by the prosecution at the penalty phase were the number of persons killed in the firebombing and the number of concurrent life sentences that Terry was serving.

In an attempt to prove mitigating circumstances, the defense sought to prove that Terry "was under the influence of extreme mental or emotional disturbance" (*id.* at § 9711(e)(2)), that his capacity to conform his conduct to the requirements of law was substantially impaired (*id.* at § 9711(e)(3)), and that other mitigating factors were present (*id.* at § 9711(e)(8)). The jury found the presence of all three of the aggravating circumstances claimed by the prosecution, and it also found that these aggravating circumstances outweighed any mitigating circumstances. The jury therefore sentenced Terry to death. Terry was subsequently sentenced, in addition, to a

life sentence on the charge of assault by a life prisoner.

On appeal, the Pennsylvania Supreme Court unanimously affirmed Terry's conviction and sentence. The court found that *Beck v. Alabama* did not require reversal for two reasons. First, the court held that "no charge on the lesser included offenses was warranted by the evidence." *Commonwealth v. Terry*, 513 Pa. 381, 393, 521 A.2d 398, 404, *cert. denied*, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987). Noting that psychiatric testimony is competent on the issue of specific intent to kill under Pennsylvania law only if it " 'speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent,' " (*id.* at 394, 521 A.2d at 404, (quoting *Commonwealth v. Weinstein*, 499 Pa. 106, 114, 451 A.2d 1344, 1347 (1982)), the court reviewed all of the psychiatric evidence and found that it was "either irrelevant under Pennsylvania substantive law or failed to establish legal cause." *Id.* at 392–93, 521 A.2d at 404. The court added that it had "searched the record in vain to find other evidence of the lesser included offenses" but that Terry had "presented none." *Id.* at 401, 521 A.2d at 408.

Second, the court concluded that even if *Beck v. Alabama* required a lesser-included homicide instruction in this case, the error was harmless beyond a reasonable doubt in light of the jury's verdict in favor of capital punishment at the penalty phase. The court reasoned that if the jury had been inclined to return a verdict of third-degree murder at the guilt phase because it was not convinced that Terry was guilty of first-degree murder, the jury would not have sentenced him to death. *Id.* at 403, 521 A.2d at 409.

The court went on to reject all of Terry's other arguments with the exception of the argument that his death sentence could not be carried out because Pennsylvania has no statute prescribing the manner of execution. *Id.* at 408, 521 A.2d at 412. The court stated that this issue was premature since no death warrant had been issued. *Id.*, 521 A.2d at 412. Finally, conducting the mandatory review prescribed by Pennsylvania law, the court found that the evidence was sufficient and that the sentence was "neither excessive nor disproportionate." *Id.* at 409, 521 A.2d at 412.

After certiorari was denied by the United States Supreme Court (482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685), Terry filed this petition for a writ of habeas corpus, which sought relief based on *Beck v. Alabama* and two other grounds.[3] The magistrate-judge found no merit in any of these arguments and recommended denial of the petition.

In the memorandum of law in support of his objections to the magistrate-judge's report and recommendations, Terry addressed only the argument based on *Beck v. Alabama*, and the district court rejected this argument for two reasons. First, the court held that Terry was not entitled to instructions on the lesser-included homicide charges because they had no basis in the evidence. *Terry v. Petsock*, 1991 WL 200064 at 5, 1991 U.S. Dist. LEXIS 14035 at 11–12 (E.D.Pa. filed Sept. 26, 1991). Second, the court held that the reasoning of *Beck v. Alabama* did not apply to this case because the jury was not faced with the choice of "convicting Terry of first-degree murder or setting him free." *Id.*, 1991 WL 200064 at 4, 1991 U.S. Dist. LEXIS 14035 at 12. "To the contrary," the court wrote, "in this case, the jury had a legitimate third option: they could have returned a verdict of acquittal on the capital murder charge and convicted Terry, which they did, on the lesser-included aggravated assault offense and reckless endangerment." *Id.*

Terry appealed.

## II.

On appeal, Terry argues that he was entitled, under *Beck v. Alabama* and

---

3. These grounds were (1) that he was improperly denied the funds needed to hire experts to challenge the method of selecting the jury venire and (2) that the aggravating circumstance set out in 42 Pa.Cons.Stat.Ann. § 9711(d)(9)—"a significant history of felony convictions involving the use or threat of violence to the person"—was not satisfied in this case, could not be satisfied by "one episode of prior criminal conduct," and was unconstitutionally vague.

*Schad v. Arizona,* ——. U.S. ——, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), to jury instructions on at least one lesser-included homicide offense where the evidence would support that charge; that third-degree murder is a lesser-included offense of first-degree murder; that the evidence would have justified a finding of third-degree murder; and that the instructions on the non-homicide charges were insufficient to satisfy *Beck v. Alabama* and *Schad.*

In response, the Commonwealth advances arguments that may be grouped into four categories. First, the Commonwealth contends that *Beck v. Alabama* does not apply in this case because the jury knew that even if it acquitted Terry he would still have to continue serving a life sentence and because the jury had the option of finding Terry guilty of several noncapital offenses, including one calling for mandatory life imprisonment. Second, the Commonwealth maintains that this case is controlled by *Spaziano v. Florida,* 468 U.S. 447, 454–57, 104 S.Ct. 3154, 3159–60, 82 L.Ed.2d 340 (1984), in which the Supreme Court held that the trial judge's failure to give instructions on lesser-included noncapital offenses did not violate *Beck v. Alabama* since the latter charges were barred by the statute of limitations and the defendant had chosen not to waive that defense. Third, the Commonwealth contends that instructions on third-degree murder were not required because, as the Pennsylvania Supreme Court held, they were not supported by the evidence. Finally, the Commonwealth argues that even if the failure to give such instructions was error, it was harmless beyond a reasonable doubt in light of the decision by the same jury to impose the death penalty.

We begin by considering whether *Beck v. Alabama* and the cases it has spawned apply to the present case in view of the jury's knowledge that Terry was already serving a life sentence and in view of the instructions that were given on several serious noncapital offenses.

In *Beck v. Alabama,* the defendant was charged with the capital offense of intentionally killing a robbery victim. The defendant admitted participation in the robbery, but he denied that he killed or intended to kill the victim. Since Alabama law prohibited the judge from instructing the jury on any lesser-included offense, the trial judge did not instruct the jury on the noncapital offense of felony murder. Instead, under the Alabama scheme, "the jury [was] given the choice of either convicting the defendant of the capital crime, in which case it [was] required to impose the death penalty, or acquitting him, thus allowing him to escape all penalties for his alleged participation in the crime." 447 U.S. at 628–29, 100 S.Ct. at 2385. The Supreme Court held that this scheme was unconstitutional. The Court wrote (*id.* at 637, 100 S.Ct. at 2389–90):

> [W]hen the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense—but leaves some doubt with respect to an element that would justify conviction of a capital offense—the failure to give the jury the "third option" of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.
>
> Such a risk cannot be tolerated in a case in which the defendant's life is at stake.... [I]f the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, [the state] is constitutionally prohibited from withdrawing that option from the jury in a capital case.

Later, the court added that "the unavailability of the third option of convicting on a lesser-included offense may encourage the jury to convict for an impermissible reason—its belief that the defendant is guilty of some serious crime and should be punished." *Id.* at 642, 100 S.Ct. at 2392.

In subsequent cases applying this precedent, the Supreme Court has emphasized the all-or-nothing nature of the choice presented to the jury under the Alabama procedure. In *Spaziano,* 468 U.S. at 455, 104 S.Ct. at 3159–60, the Court wrote: "The goal of the *Beck* rule ... is to eliminate the distortion of the factfinding process that is created when the jury is

forced into an all-or-nothing choice between capital murder and innocence."

The Court most recently reiterated this understanding in *Schad*. In that case, the Court found no constitutional violation under *Beck v. Alabama* where the jury, in a prosecution for the capital offense of first-degree murder, was also instructed on second-degree murder but not on the lesser-included offense of robbery. The Court wrote:

> Our fundamental concern in *Beck* was that a jury convinced that the defendant had committed some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all.... We repeatedly stressed the all-or-nothing nature of the decision with which the jury was present-ed.... As we later explained in *Spaziano v. Florida*, 468 U.S. 447, 455 [104 S.Ct. 3154, 3159–60, 82 L.Ed.2d 340] (1984), "the absence of a lesser-included offense instruction increases the risk that the jury will convict ... simply to avoid setting the defendant free.... The goal of the *Beck* rule, in other words, is to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence." This central concern of *Beck* simply is not implicated in the present case, for petitioner's jury was not faced with an all-or-nothing choice between the offense of conviction (capital murder) and innocence.

—— U.S. at ——, 111 S.Ct. at 2504 (citations omitted). *See also, Geschwendt v. Ryan*, 967 F.2d 877, 883–84 (3d Cir.1992) (in banc).

Applying this analysis, we find no constitutional violation in the present case. The jury in this case was not "forced into an all-or-nothing choice between capital murder and innocence" (*Spaziano*, 468 U.S. at 455, 104 S.Ct. at 3159–60), and the jury clearly did not labor under the belief that "the only alternative" to a vote for a capital conviction "was to set the defendant free with no punishment at all" (*Schad*, —— U.S. at ——, 111 S.Ct. at 2504).

First, the jury was aware that even if it acquitted Terry on all charges he would continue to serve a sentence of life imprisonment. As previously mentioned, one of the offenses with which Terry was charged was assault by a life prisoner, and therefore in order to prove this offense the Commonwealth introduced evidence that Terry was already serving an uncommuted life sentence at the time of the Mokychic killing. In addition, for the purpose of proving Terry's intent, the Commonwealth introduced admissions that emphasized his expectation that he would remain in prison for a very long period of time. For example, after killing the guard and being transferred to another facility, Terry stated that the guards at the new facility should leave him alone because "I have a day more than forever to do." App. at 878. On other occasions, Terry said, "I have forever to do" (App. at 316) and "I got nothing to lose" (App. at 879).[4]

Second, not only was the jury aware that Terry was already serving a life sentence, but the jury had the option of convicting him of several serious noncapital offenses, including one, assault by a life prisoner, that carries a mandatory penalty of life imprisonment. 18 Pa.Cons.Stat. §§ 1102(b), 2704. This penalty is greater than the maximum penalty for the offense on which Terry contends the jury should have been instructed, third-degree murder, which is punishable by not more than 20 years' imprisonment. *Id.* at §§ 1103(1), 2502(c).[5]

---

**4.** See also App. at 278 (state trooper testified before the jury that "I knew he (Terry) was serving life in prison at the time I interviewed him."); App. at 414 (defense attorney asks witness "And it really didn't matter because he (Terry) was in for life anyway."); App. at 741 (psychologist testified that Terry "was convicted of a firebombing which resulted in death and was sentenced to life imprisonment.").

**5.** The other noncapital offenses were aggravated assault and reckless endangering. Aggravated assault may be punished by imprisonment for up to 10 years. 18 Pa.Cons.Stat.Ann. §§ 1103(2), 2702. Reckless endangering may be punished by imprisonment for up to two years. *Id.* at §§ 1104(2), 2705.

Under all of these circumstances, we hold that the rule embodied in *Beck v. Alabama* and its progeny was not violated. Terry's jury was not forced to make an all-or-nothing choice between a guilty verdict for a capital offense and setting Terry free. On the contrary, the jury had several other options, all of which guaranteed that Terry would serve a sentence of life imprisonment. In short, this jury faced virtually the antithesis of an all-or-nothing choice.

It is instructive to compare the choices available to the jury in this case with those available to a jury in what may be viewed as a paradigmatic case in which the jury is instructed in accordance with *Beck v. Alabama* and *Schad*, that is, a case in which the jury is instructed on capital murder and the next most serious noncapital homicide offense. In Pennsylvania (assuming that the felony murder rule does not apply), the jury in such a case would receive instructions on first- and third-degree murder [6]— precisely the instructions that Terry maintains should have been provided here. If a jury in this paradigmatic situation was not completely convinced that the defendant was guilty of first-degree murder but wanted him to be incarcerated for a lengthy period, the most severe option available would be to convict for third-degree murder, for which, as previously noted, the defendant could be sentenced to imprisonment for up to 20 years. 18 Pa. Cons.Stat.Ann. §§ 1103(1), 2502(c). This option, however, would be less well suited to ensure lengthy incarceration than *any* of the noncapital options available to the jury in the present case. Here, the jury knew that its most lenient option—acquittal on all charges—meant that Terry would still have to continue serving a life sentence. And if the jury felt that still more noncapital punishment was needed, it had the option of convicting of several serious noncapital offenses. Since it is clear that a Pennsylvania jury instructed on first- and third-degree murder would not be forced to make an impermissible choice under the reasoning of *Beck v. Alabama* and *Schad*,

it follows that the jury in this case likewise faced no such improper choice.

Terry suggests, however, that the rule of *Beck v. Alabama* and its progeny was violated because his jury, although aware of his previous life sentence, might have believed that he might someday be released from prison as a result of "pardon, commutation, or further appeals." [7] We reject this argument because it rests on a patently erroneous premise—that a jury in a capital case must be given the opportunity to return a verdict that guarantees that the defendant will never be released from prison. No jury can ever be certain that a defendant it convicts will never be released. There is always a possibility that the defendant's conviction may be overturned on appeal or collateral attack. In addition, in many jurisdictions, including Pennsylvania, the governor may pardon or commute any offense except impeachment. *See* Pa. Const., art. 4, § 9(a). In many capital cases (indeed, probably the great majority), the punishment for the most serious noncapital offense charged is not mandatory life imprisonment without any possibility of release. And in many capital cases in many states, a defendant convicted for the state's most serious noncapital homicide offense may be paroled.

It is again instructive to consider the paradigmatic situation of a Pennsylvania jury instructed in a capital case on first- and third-degree murder. That jury could not be certain that the defendant, if convicted of third-degree murder, would spend the rest of his life in prison. On the contrary, the jury could be certain, if it knew the Pennsylvania homicide statutes, that the defendant could not be sentenced to more than 20 years' imprisonment. In the present case, therefore, it makes no difference whether the jury believed that Terry might someday be released from prison if it did not convict him for first-degree murder.

It likewise does not matter whether Terry's jury realized that the punishment for assault by a life prisoner was life imprisonment or whether the jury mistakenly be-

6. See, *supra* note 1 and accompanying text, at 374.

7. Appellant's Reply Brief at 5.

lieved that some lesser punishment was possible or likely. In the first place, even if the jury greatly underestimated the punishment prescribed for this offense, the jury was still aware that Terry was serving a previously imposed life sentence. In the second place, neither *Beck v. Alabama* nor its progeny require a reviewing court to speculate about a capital jury's beliefs regarding the available or likely punishment for the serious, noncapital offenses on which it is charged—and for good reason. A reviewing court almost never has any reliable way of determining what, if anything, a jury thought about such matters. Terry's counsel suggested that the jury in this case might have underestimated the severity of the punishment for assault by a life prisoner because that offense does not involve homicide. Equally plausible arguments may be made, however, about other noncapital offenses, including the offense on which Terry maintains his jury should have been instructed—what Pennsylvania law terms third-degree murder. This crime, except where the felony murder rule applies, is actually the second most serious homicide offense under Pennsylvania law, and it corresponds to what was termed second-degree murder under the Pennsylvania statutory scheme that remained in effect from 1794 to 1974 and was copied by many other states. P.L. 1482, No. 334, § 1 (Dec. 6, 1972); 3 Sm.L 186 (April 22, 1794); *see* 2 W. LaFave and A. Scott, *Substantive Criminal Law*, § 7.7(e) at 245 n. 66 (1986); R. Perkins & R. Boyce, *Criminal Law* 127 & n. 62 (1982). Thus, if we accepted Terry's argument regarding the offense of assault by a life prisoner, we might just as logically speculate that a jury might fail to appreciate the severity of the punishment available for third-degree murder—or, undoubtedly, a variety of other noncapital offenses. No such speculation, however, is required by *Beck v. Alabama* or any subsequent cases.

In sum, we hold, based on the particular facts of this case, that an instruction on

third-degree murder was not needed to satisfy the rule adopted in *Beck v. Alabama* or the cases that have followed.[8] As a result, we need not and do not reach the alternate grounds for affirmance advanced by the prosecution.

The judgment of the district court will be affirmed.

Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, SCIRICA, COWEN, NYGAARD, ALITO, and ROTH, Circuit Judges.

### SUR PETITION FOR REHEARING

The petition for rehearing filed by appellant in the above-entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the Court in banc, the petition for rehearing is denied.

---

8. This case does not present the issue of whether *Beck* applies when the jury had an alternative to verdicts of not guilty or guilty of first degree murder but that alternative was either not supported by the evidence or involved such a minor offense that its availability does not adequately insure the reliability of the jury's homicide verdict. *See Schad,* — U.S. at ——, 111 S.Ct. at 2505.