**UNITED STATES of America**

**v.**

**Dean Anthony BECKFORD, Claude Gerald Dennis, Leonel Romeo Cazaco, Richard Anthony Thomas.**

**Criminal Action Nos. 3:96CR66–(01), 3:96CR66–(05), 3:96CR66–(06) and 3:96CR66–(07).**

United States District Court, E.D. Virginia, Richmond Division.

June 3, 1997.

David Novak, Stephen Miller, Andrew McBridge, Asst. U.S. Attorney's, Office of U.S. Atty., Richmond, VA, for Government.

Gerald T. Zerkin, Richmond, VA, for Mr. Beckford.

John C. Jones, Quinton, VA, Scott Brettschneider, Kew Gardens, NY, for Mr. Dennis.

David P. Baugh, Richmond, VA, Elizabeth D. Scher, Morchower, Luxton & Whaley, Richmond, VA, for Mr. Thomas.

## MEMORANDUM OPINION

PAYNE, District Judge.

Defendants Dean Anthony Beckford, Claude Gerald Dennis, Leonel Romeo Cazaco and Richard Anthony Thomas ("the defendants") are charged in a thirty-seven count indictment with offenses including, intentional murder in furtherance of a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(e)(1)(A). Pursuant to 21 U.S.C. § 848(h), the Government notified each defendant that it intends to seek a penalty of death in the event of conviction. The defendants have filed a motion to dismiss Counts 5, 6, 10, 11, and 12 of the Superseding Indictment and to quash the applicable provisions in the Government's notice of intent to seek a penalty of death on the basis that 21 U.S.C. § 848(e)(1)(A), murder in furtherance of a continuing criminal enterprise ("CCE"), is unconstitutional, both on its face and as applied.[1]

According to the defendants, Section 848(e)(1)(A) violates the Fifth Amendment Due Process Clause and the Eighth Amendment of the United States Constitution because it prevents the Court from instructing the jury on lesser included homicide offenses. The defendants further assert that Section 848(e)(1)(A) violates the Equal Protection Clause of the Fourteenth Amendment because the right to a lesser included homicide offense instruction in a capital case is a fundamental right. In particular, the defendants contend that, because Congress drafted other federal, capital crimes to contain lesser included homicide offenses, the failure of Congress to provide a lesser included homicide offense in Section 848(e)(1)(A) creates a classification which affects a fundamental right. For the following reasons, the Court finds that Section 848(e)(1)(A) is constitutional on its face and as-applied, and therefore denies the defendants' motion.

## DISCUSSION

### I. SECTION 848(E)(1)(A) DOES NOT VIOLATE THE FIFTH OR EIGHTH AMENDMENTS

#### A. Section 848 Contains No Lesser Included Homicide Offense Nor Can Such Offenses be Implied

To prove murder in furtherance of a continuing criminal enterprise, the Government

1. The motion was filed by Dean Beckford. Richard Thomas ("Thomas"), Claude Dennis ("Dennis"), and Leonel Cazaco ("Cazaco") moved to adopt this motion. The motions to adopt are granted.

must show that the defendants "engag[ed] in or work[ed] in furtherance of a continuing criminal enterprise, or ... engag[ed] in an offense punishable under section 841(b)(1)(A) of ... title [21] ... [and] intentionally kill[ed] or counsel[ed], command[ed], induc[ed], procur[ed] or caus[ed] the intentional killing of an individual and such killing result[ed]." 21 U.S.C. § 848(e)(1)(A). In addition, the Fourth Circuit has held that the Government must show a substantive connection between the murder and the predicate offense; that is, proof of temporal coincidence will not support a conviction. *United States v. Tipton,* 90 F.3d 861, 887 (4th Cir. 1996) (finding that jury instructions sufficiently required proof of substantive connection between the murder and the continuing criminal enterprise offense), *cert. denied,* — U.S. —, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997).

■ The text of Section 848(e) confirms the defendants' claim that the statute neither substantively defines, nor contains penalties for, grades of homicide lesser than intentional killing which may be committed in furtherance of a CCE or a drug crime, as defined by the statute. In addition, an examination of Title 18 homicide offenses verifies that other, federal homicide statutes, such as voluntary manslaughter and second degree murder, 18 U.S.C. §§ 1111, 1112, cannot serve as lesser included offenses because offenses such as those must be committed within the maritime or territorial jurisdiction of the United States in order to be federally prosecuted. By way of contrast, a Section 848(e)(1)(A) killing need not occur within federal territorial jurisdiction. Rather, to satisfy the federal jurisdictional nexus of that statute, the killing must be committed in furtherance of the CCE or while the defendant is engaged in certain, enumerated federal drug crimes.

■ Finally, the courts cannot imply lesser included homicide offenses to Section 848(e)(1)(A) because there are no common law federal crimes. And, of course, only Congress can "make an act a crime, affix a punishment to it, and declare the Court that shall have jurisdiction ..." *Keeble v. United States,* 412 U.S. 205, 215, 93 S.Ct. 1993, 1999, 36 L.Ed.2d 844 (1973) (Stewart, J. Dissenting, joined by Powell, J. and Rehnquist, J.) (quoting *United States v. Hudson,* 7 Cranch 32, 11 U.S. 32, 3 L.Ed. 259 (1812)); *see generally United States v. Harrelson,* 754 F.2d 1153 (5th Cir.), *reh'g denied* 766 F.2d 186 ("there are no federal common law crimes only statutory ones"; jury cannot convict for conspiring to commit non-existent offense), *cert. denied,* 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985). Even if a court had the power to imply a lesser homicide offense upon discerning Congressional intent to do so, Section 848 provides no indication that Congress harbored such an intent. Therefore, it is necessary to address the defendants' contention that the absence of lesser included homicide offenses renders Section 848 unconstitutional.

### B. The Lesser Included Offense Doctrine

The constitutional analysis of Section 848 begins with *Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844, wherein the Supreme Court explained the origins of the lesser included offense doctrine, remarking that,

> Although the lesser included offense doctrine *developed at common law* to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged, it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater. *The Federal Rules of Criminal Procedure deal with lesser included offenses, see Rule 31(c), and the defendant's right to such an instruction has been recognized* in numerous decisions of this Court.

*Id.* at 208, 93 S.Ct. at 1995 (emphasis added) (citations omitted). In *Keeble,* the Supreme Court found a statutory basis for implying a lesser included offense of simple assault within the greater crime of assault with intent to commit serious bodily injury as charged under the Major Crimes Act, 18 U.S.C. §§ 1153, 3242. However, in *dicta,* which has since taken greater significance,

the Court examined the constitutional underpinnings on the need for instructions on lesser included offenses. In so doing, the Court observed that it had never "explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense." *Id.* at 213, 93 S.Ct. at 1998. It was "nevertheless clear" to the Court that "a construction of the Major Crimes Act to preclude such an instruction would raise difficult constitutional questions." *Id.* That remark was preceded by the observation that:

> ... it is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. *Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.* In the case before us, for example, an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple assault if that option had been presented. But the jury was presented with only two options: convicting the defendant of assault with intent to commit great bodily injury, or acquitting him outright. We cannot say that the availability of a third option—convicting the defendant of simple assault—could not have resulted in a different verdict.

*Id.* at 212–13, 93 S.Ct. at 1997–98 (emphasis added).

Seven years later, the *dicta* from *Keeble* assumed a place of prominence in *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), wherein the Supreme Court had occasion to examine the constitutional implications of a failure to give lesser included offense instructions to a jury in the context of a capital trial. As will be explained below, *Beck's* status as the seminal case on the lesser included offense doctrine and the confusion that surrounds the scope of that doctrine necessitates a fulsome exposition of its facts, reasoning, and holding.

In *Beck,* the Supreme Court granted certiorari to decide whether:

> [A] sentence of death constitutionally [may] be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict.

*Id.* at 627, 100 S.Ct. at 2384. The Court held that a death sentence could not be imposed under such circumstances.

An analysis of *Beck* must focus first on the unique Alabama death penalty statute there at issue. Pursuant to that statute, Beck was tried for the capital offense of intentional killing during the course of a robbery. The intent to kill element could not be proved by evidence that the defendant committed felony murder. Felony murder was, therefore, a lesser included offense to the crime for which Beck was prosecuted. Nonetheless, and even though the facts adduced at trial would have permitted a conviction for felony murder, the jury was not permitted to consider whether Beck had committed that crime because in capital cases, Alabama law prohibited the judge from instructing the jury on lesser included offenses.

Following Beck's conviction for the capital offense, the judge held a hearing respecting aggravating and mitigating circumstances, and Beck was sentenced to death. The jury, however, was not informed of that procedure; and, instead, in determining Beck's guilt, operated under the misapprehension that it could either convict him of the capital crime, in which case, it was required to irrevocably impose the death penalty, or acquit Beck, thereby allowing him to escape all punishment.

The precise holding of *Beck* is subject to debate. In its most narrow sense, *Beck* held only (but, of course, significantly) that, in cases where a jury believes that it must either convict and irreversibly sentence the defendant to death or acquit the defendant, the Constitution prohibits the imposition of a death sentence when the jury is not permitted to consider a verdict of guilt on a lesser included non-capital offense when the evidence would have supported such a verdict. However, *Beck* has come to be cited for the far broader proposition that an instruction must be given in a capital case on a lesser included offense where the evidence would support such a verdict. *See e.g. Reeves v. Hopkins,* 102 F.3d 977, 982 (8th Cir.1996) ("The Supreme Court held that in a capital case due process requires that the jury be given the option of convicting the defendant on a *lesser included noncapital offense* if the evidence would support conviction on that offense") (emphasis added), *petition for cert. filed,* 65 U.S.L.W. 3741, No. 96–1693 (1997); *United States v. Chandler,* 996 F.2d 1073, 1099 (11th Cir.) (citing *Beck* for rule that "[t]he government may not statutorily preclude a defendant from seeking a lesser included offense instruction, if the evidence could support a finding of guilt on the lesser offense"), *reh'g denied,* 5 F.3d 1501 (1993), *cert. denied,* 512 U.S. 1227, 114 S.Ct. 2724, 129 L.Ed.2d 848 (1994); *Trujillo v. Sullivan,* 815 F.2d 597 (10th Cir.1987) (citing to *Beck* for proposition that there is "clearly ... a constitutional right to a lesser included offense instruction when the death penalty is imposed and the evidence warrants the instruction."), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987).

The more expansive reading of *Beck* finds support in the following passage taken from that opinion:

> *While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in* both state and federal courts *establishes the value* to the defendant of *this procedural safeguard.* That safeguard would seem to be especially important in a case such as this. For when the *evidence unquestionably establishes that the defendant is guilty of a serious violent offense*—but leaves some doubt with respect to an element that would justify conviction of a capital offense—*the failure to give the jury the 'third option' of convicting on a lesser included offense would seem inevitably to enhance the risk of an unwarranted conviction.*
>
> *Such a risk cannot be tolerated in a case in which the defendant's life is at stake.* As we have often stated, there is a significant constitutional difference between the death penalty and lesser punishment ...
>
> * * * * * *
>
> To insure that the death penalty is indeed imposed on the basis of "reason rather than caprice or emotion" we have invalidated procedural rules that tended to diminish the reliability of the sentencing determination. The same reasoning must apply to rules that diminish the reliability of the guilt determination. *Thus, if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, Alabama is constitutionally prohibited from withdrawing that option from the jury in a capital case.*

*Id.* at 637–38, 100 S.Ct. at 2389 (citations omitted) (emphasis added). This passage does not identify the constitutional provision on which the Supreme Court relied. Nor is that made clear elsewhere in the decision.[2]

2. *Beck* could be read to rest on due process principles. "Interpreted broadly or in the abstract, out of the precise context of the capital case, *Beck 's* reasoning sounds like a general due process analysis ... Indeed, *Beck* reviewed the history of the [lesser included offense] doctrine and commented that the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard." James A. Shellenberger, James A. Strazzella, *The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process And Double Jeopardy Remedies,* 79 Marq.L.Rev. 1, 20 (1995) (inner quotations omitted). Then again, *Beck* also resonates in Eighth Amendment principles. The Supreme Court specifically relied upon Eighth Amendment cases, such as *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and refused to decide the application of its holding to noncapital cases. Moreover, the precise issue which the Court ad-

Indeed, after stating that Alabama would be constitutionally prohibited from withdrawing the lesser included offense instruction if doing so enhanced the risk of an unwarranted conviction, the Supreme Court in *Beck* embarked on a discussion as to why the defendant had been subjected to an enhanced risk of an unwarranted conviction. First, the Court rejected the state's suggestion that the jury's belief that the sentence of death was mandatory upon conviction, had heightened, rather than diminished, the reliability of the guilt determination. Then, the Court commented that the seemingly mandatory nature of the death penalty actually flawed the Alabama statute because it made "the guilt determination, depend, at least in part, on the jury's feelings as to whether or not the defendant deserves the death penalty, without giving the jury any standards to guide its decision on this issue." *Id.* at 640, 100 S.Ct. at 2391.

Second, the Court rejected, as purely speculative, the state's contention that the Alabama statute struck the perfect balance between competing emotions which would assure a reliable procedure.[3] The Court summed up its decision by stating:

> In the final analysis the difficulty with the Alabama statute is that it *interjects irrelevant considerations into the factfinding process, diverting the jury's attention from the central issue of whether the State has satisfied its burden of proving beyond a reasonable doubt that the defendant is guilty of a capital crime.* Thus, *on the one hand, the unavailability* of the third option of convicting on a *lesser included offense* may *encourage the jury to convict* for an impermissible reason—its belief that the defendant is guilty of some serious crime and should be punished. On the *other hand,* the *apparently mandatory nature of the death penalty may encourage it to acquit* for an equally impermissible reason—that, whatever his crime, the defendant does not deserve death. *In any particular case these two extraneous factors may favor the defendant or the prosecution or they may cancel each other out. But in every case they introduce a level of uncertainty and unreliability into the factfinding process that cannot be tolerated in a capital case.*

*Id.* at 642–43, 100 S.Ct. at 2392 (emphasis added). That not so clear statement and the so-called third-option (lesser included offense) passage, explained above at pp. 1420–1421, form the cornerstone of the defendants' claims, to which the Court now turns its attention. An examination of that position follows.

### C. The Application of *Beck* to this Case

#### 1. Section 848(e)(1)(A) is Facially Constitutional

At the outset, it is necessary to assess the defendants' claim that Section 848(e)(1)(A) is facially unconstitutional. For the reasons which follow, it is not.

dressed was expressed in terms of punishment: *"[m]ay a sentence of death constitutionally be imposed after a jury verdict of guilt of a capital offense,* when a jury was not permitted to consider a verdict of guilt of a lesser included noncapital offense...." To which the Court responded, "[w]e now hold that the death penalty may not be imposed under these circumstances." *Beck,* 447 U.S. at 627, 100 S.Ct. at 2384. *Beck* could depend on both constitutional provisions. The defendant challenged his conviction and sentence on both, and the Supreme Court itself has explained *Beck* on both Due Process and Eighth Amendment grounds. *See e.g. Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 2052–53, 72 L.Ed.2d 367 (1982), "[o]ur holding in *Beck,* like our other Eighth Amendment decisions in the past decade, was concerned with 'insuring that sentencing discretion in capital cases is channelled so that arbitrary and capricious results are avoided." The Court vacillated, however, stating that "*Beck* held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction." *Id.; see also e.g. Trujillo v. Sullivan,* 815 F.2d at 601–02 (discussing *Beck's* constitutional underpinnings).

3. The state argued that, "because of their reluctance to acquit a defendant who is obviously guilty of some serious crime, juries will be unlikely to disregard their oaths and acquit a defendant who is guilty of a capital crime simply because of their abhorrence of the death penalty. However, because the death penalty is mandatory ... the jury will be especially careful to accord the defendant the full benefit of the reasonable-doubt standard." *Id.* at 640–41, 100 S.Ct. at 2391.

■ In *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Supreme Court explained the heavy burden a party faces when presenting a facial challenge to the constitutionality of a statute:

> A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [a legislative] Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment.

*Id.* at 745, 107 S.Ct. at 2100 (citations omitted). The continued vitality of the "no set of circumstances" standard set forth in *Salerno* has been called into question.[4] Nevertheless, *Salerno 's* rule continues to apply in this circuit because in *Jordan v. Jackson,* 15 F.3d 333, 343–44 (4th Cir.1994), the Fourth Circuit adopted the "no set of circumstances" test. *Thorne v. Department of Defense,* 945 F.Supp. 924, 929 n. 13 (E.D.Va.1996).

Under the stringent *Salerno* test, which is the law in this circuit, the defendants' facial challenge to Section 848(e)(1)(A) must fail because there exists at least one circumstance in which Section 848 would be constitutional. That circumstance arises when no "evidence, which if believed, could reasonably ... [lead] to a verdict of guilt of a lesser offense." *Hopper v. Evans,* 456 U.S. 605, 610, 102 S.Ct. 2049, 2052, 72 L.Ed.2d 367 (1982). Indeed, it is well established that "due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction." *Id.* at 611, 102 S.Ct. at 2053. Therefore, Section 848(e)(1)(A) meets constitutional muster in cases in which the evidence presented would not support a lesser included offense instruction. Consequently, the Court rejects the defendants' facial challenge to Section 848(e)(1)(A).

**2. The As–Applied Constitutional Challenge is Ripe for Review**

■ The defendants' challenge to Section 848, as applied, provides more cause for concern but also must be rejected. As a preliminary matter, it is necessary to explain why the challenge should be considered at the pretrial stage.

■ Obviously, the conclusion of the evidence serves as the most appropriate time for an examination of whether the facts actually support a lesser included offense charge. And, indeed, federal law provides that "a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.' " *Hopper v. Evans,* 456 U.S. at 612, 102 S.Ct. at 2053 (quoting *Keeble v. United States,* 412 U.S. at 208, 93 S.Ct. at 1995). *Beck* also requires lesser included offense instructions *only if* the evidence supports such an instruction. *Hopper,* 456 U.S. at 611, 102 S.Ct. at 2052–53; *see also Kornahrens v. Evatt,* 66 F.3d 1350, 1354 (4th Cir. 1995) (" 'the Circuit and the Supreme Courts agree that lesser included offense instructions are not required where ... there is no support for such instructions in the evi-

4. For example, in *Janklow v. Planned Parenthood, Sioux Falls Clinic,* ––– U.S. ––––, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996), in concurring in the denial of certiorari, Justice Stevens wrote that *Salerno* had correctly described that a facial challenge would fail if it was shown only that there was some conceivable set of circumstances in which the statute would operate unconstitutionally; however, "... the preceding sentence in the *Salerno* opinion went well beyond that principle ... [the no set of circumstances] statement was unsupported by citation or precedent. It was also unnecessary to the holding in the case, for the court effectively held that the statute at issue would be constitutional as applied in a large fraction of cases. While a facial challenge may be more difficult to mount than an as-applied challenge, the *dicta* in *Salerno* does not accurately characterize the standard for deciding facial challenges and neither accurately reflects the Court's practice with respect to facial challenges, nor is it consistent with a wide array of legal principles." *Id.* at ––––, 116 S.Ct. at 1583 (inner citations and quotations omitted); *compare id.* at ––––, 116 S.Ct. at 1584 (Scalia, J. dissenting from denial of certiorari) (arguing that *Salerno* summarized a long established principle of jurisprudence, that Justice Steven's position was "head snapping" and supported only by a law review article, and disagreeing with the suggestion that courts should ignore the clear language of *Salerno* ).

dence.' "), *cert. denied*, — U.S. —, 116 S.Ct. 1575, 134 L.Ed.2d 673 (1996) (quoting *Briley v. Bass*, 742 F.2d 155, 164 (4th Cir.), *cert. denied*, 469 U.S. 893, 105 S.Ct. 270, 83 L.Ed.2d 206 (1984)).

Defendants Beckford and Dennis already have proffered facts which could support a lesser included offense instruction on voluntary manslaughter or second degree murder.[5] *See* 18 U.S.C. § 1112; 18 U.S.C. § 1111.[6] However, if upon fuller development at trial, the facts would not support a charge for either of these offenses, reserving judgment until the conclusion of the evidence could eliminate the need to decide the constitutional question.

At the same time, however, reserving resolution of the issue could harm the defendants without presenting the constitutional question more clearly. For instance, if Section 848(e)(1)(A) contains no lesser included homicide offenses, then, the theory which those two defendants have proffered would either be irrelevant to matters in issue or would concede guilt in order to secure the instruction. Given that situation, the defendants likely would not present their theories at trial, and in reserving judgment on the constitutional question, the Court, in effect, would force the defendants to undergo prosecution pursuant to a potentially unconstitutional statute without obtaining the benefit of significant clarification of the facts.

Moreover, if the statute is constitutionally defective for its failure to contain lesser included offenses, the defendants are entitled to know that now because, the whole nature of the trial would change. Indeed, the presence or absence of the counts at issue would transform this case from a capital to a non-capital trial, and would also affect opening statements, the presentation of the evidence, and the selection of the jury, which no longer would need to be death qualified.[7] Consequently, because the evidence proffered by Beckford and Dennis provides a basis to conclude that a lesser included homicide offense may be warranted, the matter is ripe for resolution.[8] The Court, therefore, will assume from the proffered evidence, as has the Government for purposes of this motion, that the defendants would be able to show that a voluntary manslaughter or second degree murder lesser included offense instruction would be warranted, but could not be given. Hence, the only remaining matter for determination is whether, under those circumstances, Section 848(e)(1)(A) is unconstitutional as-applied to the defendants' case.

### D. Section 848 is Constitutional As-Applied to the Defendants

Turning, then, of necessity, to the defendants' constitutional claims, Section 848(e)(1)(A) is constitutional as-applied here

5. Specifically, excerpts of testimony from the prior state trial of Claude Dennis ("Dennis") reveal that Delroy Smith ("Smith") and Dennis testified that the shooting of a victim in the present case, Dasmond Miller ("Miller"), arose out of an argument between Beckford and Miller over a weapon. A "scuffling" broke out between Beckford and Miller, and Smith testified that he tried to break up the fight. Smith was prevented from doing so, however, because Dennis put a gun to Smith's head. According to Smith, Beckford nodded his head toward Dennis, which prompted Dennis to shoot Miller (while Miller was taking off his own jacket). Dennis' testimony disagreed with Smith's version. Specifically, Dennis asserted that Smith began shooting first and that Dennis simply returned fire.

6. "Manslaughter is the unlawful killing of a human being without malice. It is of two kinds: Voluntary—Upon a sudden quarrel or heat of passion ..." 18 U.S.C. § 1112. Second degree murder is any murder (unlawful killing with malice aforethought), which is not murder in the first degree, which is murder "perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse, or sexual abuse, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death or any human being other than him who is killed ..." 18 U.S.C. § 1111.

7. This also would be the result, even if it were assumed that the defendants could offer evidence of their theory for some purpose other than proving the existence of the lesser offense, such as negating one or more of Section 848's elements or claiming self-defense.

8. Defendants Thomas and Cazaco have adopted this motion, but they have made no showing of a defense to the capital charges on any theory implementing a lesser included offense.

for two reasons: (1) the statute does not contain the "all or nothing" choice condemned by *Beck;* and (2) *Beck* does not require Congress to create only those capital crimes which contain lesser included homicide offenses.

### 1. Section 848(e) as Charged Does Not Pose An "All or Nothing" Situation

In *Beck,* the Supreme Court was concerned that the interjection into the factfinding process of two irrelevant considerations had rendered the jury's determination of guilt too unreliable to satisfy the Constitution. First, the Supreme Court concluded that: "the unavailability of the third option of convicting on a lesser included offense may encourage the jury to convict for an impermissible reason—its belief that the defendant is guilty of some serious crime and should be punished." *Beck,* 447 U.S. at 642, 100 S.Ct. at 2392. Second, and of equal significance, the Supreme Court observed that: "the apparently mandatory nature of the death penalty may encourage it [the jury] to acquit for an equally impermissible reason—that, whatever his crime, the defendant does not deserve death." *Id.* at 642–43, 100 S.Ct. at 2392.

In its most recent decision involving *Beck, Schad v. Arizona,* 501 U.S. 624, 646–47, 111 S.Ct. 2491, 2504–05, 115 L.Ed.2d 555 (1991), the Supreme Court reiterated these two considerations and emphasized that *Beck's* core concern was to eliminate the "distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence." *Id.* (quotations omitted). As the following amplifies, neither of *Beck's* concerns are implicated here; and, therefore, this case does not present the jury with the all-or-nothing choice condemned by the Court.

In *Schad,* the Supreme Court held that a trial court had not erred in refusing to instruct the jury on the offense of robbery, as a lesser included offense of robbery murder, where the defendant had been convicted of first degree murder under a theory of premeditated and felony murder, and where the trial court had instructed the jurors on the noncapital offense of second degree murder. The defendant in *Schad* had claimed that, because his theory of defense would have permitted the jury to convict him of robbery, but find him innocent of murder,[9] the trial court had erred in failing to instruct the jury on the offense of robbery.

The Court rejected the defendant's argument, finding that it misapprehended the underpinnings of *Beck.* As the Court explained: "[o]ur fundamental concern in *Beck* was that a jury convinced that the defendant had committed some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all." *Id.* at 646, 111 S.Ct. at 2504. However, the Supreme Court concluded that, in *Schad,* the "central concern of *Beck* simply [was] not implicated ... *for petitioner's jury was not faced with the all-or-nothing choice between the offense of conviction (capital murder) and innocence.*" *Id.* at 647, 111 S.Ct. at 2505 (emphasis added).

Indeed, the Supreme Court, in *Schad,* underscored that, as to the meaning of *Beck,* it had "repeatedly stressed the all-or-nothing nature of the decision with which the jury was presented." *Schad,* 501 U.S. at 646, 111 S.Ct. at 2505. In support of this interpretation of *Beck,* the Court cited its decision in *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), in which it had found that:

> [t]he absence of a lesser included offense instruction increases the risk that the jury will *convict ... simply to avoid setting the defendant free ... The goal of the Beck rule, in other words, is to eliminate the distortion of the factfinding process that is created when the jury is forced into an all-or-nothing choice between capital murder and innocence.*

9. The defendant's theory in *Schad* was not that he committed murder without premeditation, thereby supporting a second degree murder conviction, but that, notwithstanding the defendant's possession of the victim's property, someone else committed the murder, which would have supported a robbery conviction.

*Schad,* 501 U.S. at 646–47, 111 S.Ct. at 2505 (quoting *Spaziano,* 468 U.S. at 455, 104 S.Ct. at 3159–60) (emphasis added) (alterations in original). Neither of the two concerns articulated in *Beck* are involved in this case. The jury will not face the all-or-nothing choice between capital murder and innocence; and, therefore, as the following further explains, Section 848(e)(1)(A) does not run afoul of *Beck* and its progeny.

**a. There is No All-or-Nothing Choice because the Jury Has a Third Option for Conviction**

This case does not implicate Beck's first concern, that "the unavailability of the third option of convicting on a lesser included offense may encourage the jury to convict for an impermissible reason—its belief that the defendant is guilty of some serious crime and should be punished." *Beck,* 447 U.S. at 642, 100 S.Ct. at 2392. Here, the jury, upon satisfactory proof, may convict the defendants of the underlying drug conspiracy, a serious offense with which all have been charged in Count 3 of the Superseding Indictment.

In other words, contrary to the defendants' assertions, *Beck* does not require a lesser included homicide offense instruction.[10] Rather, *Beck* was primarily concerned with assuring the reliability of the determination of guilt or innocence. That seems rather clear from *Schad* which teaches that this object may be accomplished by giving the jury an option of convicting on a non-capital charge, whether or not that third option ideally reflects the defendant's theory of defense. *See Schad,* 501 U.S. at 647, 111 S.Ct. at 2505 (rejecting argument that "jurors should have been given opportunity to return a verdict in conformity with their reasonable view of the evidence," because "the fact that the jury's 'third option' was second-degree murder rather than robbery does not diminish the reliability of the jury's capital murder verdict.").

As charged in the Superseding Indictment, in order to convict the defendants of murder in furtherance of a CCE, the Government must prove that the defendants:

> while engaged in and working in furtherance of a Continuing Criminal Enterprise... as charged in Count Four of [the Superseding] Indictment ... *and* while engaged in an offense punishable under Title 21, United States Code, Section 841(b)(1)(A), to wit: a conspiracy to possess with intent to distribute and to distribute fifty (50) grams or more of a substance containing a detectable amount of cocaine base, commonly known as "crack", as charged in Count Three of [the Superseding] Indictment, ... did knowingly, intentionally, and unlawfully kill ...

*See* Superseding Indictment, Counts 5, 6, 10, 11, and 12. This charge permits the Government to proceed under two theories: (1) it may show that the killing was committed in *furtherance of the CCE* charged in Count 4, (the "in concert" element of Count 4 is the same agreement as that forming the Section 846 drug conspiracy charged in Count 3 of the Superseding Indictment); or (2) it may show that the killing was committed while the defendants *engaged in the drug conspiracy* charged in Count 3 of the Superseding Indictment.

Under either theory, the Government will have to show that the defendants engaged in the drug conspiracy charged in Count 3. As to the second theory, intentional killing while the defendants were engaged in a drug offense, punishable under Section 841(b)(1)(A), the Government admits that it must show, in relevant part, that the defendants committed the alleged killings while they were "member[s] of and *engaging in,* the drug conspiracy charged in Count Three ... [And] that the intentional killing was done knowingly and was connected in a meaningful way to the drug conspiracy." *See* Government Proposed Jury Instruction No. 77 at 136 (emphasis added).

As to the first theory, the Government concedes that it must prove all the elements of a substantive CCE. *See* Government's Response to Defendant's Motion at 8. This does

10. The Court finds no evidence to support the defendants' claim that the defendant in *Beck* had been charged with the underlying crime of robbery *in addition* to the crime of "robbery or attempts thereof when the victim is intentionally killed by the defendant."

not mean that the defendants must be convicted of a CCE substantive offense to be convicted of killing *in furtherance* of a CCE. *See United States v. McCullah,* 76 F.3d 1087, 1102 (10th Cir.1996) ("While knowledge of the nexus between the homicide and the continuing criminal enterprise is necessary under § 848(e), the defendant need not be a 'conspirator' nor have full knowledge of the objectives or extent of the continuing criminal enterprise in order to be 'working in furtherance' of the enterprise."), *reh'g denied,* 87 F.3d 1136 (1996), *cert. denied,* — U.S. —, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997). However, the Government must show that a CCE existed at the time of the intentional killing and that the intentional killing was specifically intended by the defendants to further the goals of the CCE. *See* Government Proposed Jury Instruction No. 75 at 133. Hence, because the drug conspiracy charged in Count 3 is a lesser included offense to the substantive CCE offense charged in Count 4 of the Superseding Indictment,[11] by proving that a defendant committed a killing with specific intent to further the goals of the CCE, the Government will, in effect, show that the defendants engaged in the drug conspiracy, which is charged in Count 3 of the Superseding Indictment. Indeed, each of the killings charged in the counts at issue have also been charged as overt acts of the drug conspiracy in Count 3. *See* Superseding Indictment, ¶ 12 at 4; ¶ 49 at 47; *see also, McCullah,* 76 F.3d at 1103–04 (finding that even if there is no evidence of drug trafficking, a conviction of a § 846 conspiracy may stand where there is evidence of participation in drug related operations, such as recovery of stolen drugs and punishment of drug thieves; jury may infer meeting of the minds and awareness of scope and objective of drug conspiracy).[12]

Therefore, whether or not Count 3 technically serves as a lesser included offense to a charge of intentional killing in furtherance of a CCE or while engaging in a drug crime, or whether the conspiracy constitutes only a lesser related offense, based on the charges in the Superseding Indictment, here, the jury must find that the defendants engaged in the drug conspiracy charged in Count 3, no matter which of the Government's theories prevails, if any.[13]

In this regard, Section 848(e)(1)(A) closely resembles, but of course, is not, a felony murder offense.[14] And, as the dissenting justices in *Schad* remarked, in responding to Arizona's claim that felony murder in that state had no lesser included offense,

> ... while deference is due to state legislatures and courts in defining crimes, the deference has constitutional limits. In the case of a compound crime such as felony murder, in which one crime must be proved in order to prove the other, the underlying crime must, as a matter of law, be a lesser included offense of the greater.

*Schad,* 501 U.S. at 661–62, 111 S.Ct. at 2512 (White, J., dissenting, joined by Marshall, J., Blackmun, J., and Stevens, J.) (concluding that "the jury could not have convicted [the defendant] of felony murder/robbery without

11. *See* Government Response to Dean Beckford's Motion for a Bill of Particulars at 2 (Government concedes that drug conspiracy charged in Count 3 is lesser included offense to CCE charged in Count 4); *see also Rutledge v. United States,* — U.S. —, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (where "in concert element" of CCE is based on same agreement as § 846 conspiracy, conspiracy is lesser included offense of CCE); *accord United States v. Tipton,* 90 F.3d 861 (4th Cir.1996).

12. The Government also has claimed that the defendants may be found guilty of the § 841(e)(1)(A) offense pursuant to the "coconspirator liability" doctrine, so long as the jury finds that the defendant was a member of the conspiracy charged in Count 3, that the killing was committed by a member of the conspiracy, and the defendant could reasonable have foreseen the commission of the crime. Here, again, the jury must conclude that the defendant is guilty of the Count 3 conspiracy. *See* Government's Proposed Jury Instruction No. 78 at 138.

13. Because all of the defendants have been charged with Count 3 of the Superseding Indictment, there is no notice problem, nor does this case subject the defendants to prosecution for a crime, which has not been presented to the Grand Jury.

14. Section 848(e)(1)(A) differs from felony murder offenses because it requires defendants to act with *mens rea* separate from the intent needed to commit the underlying felony.

first finding him guilty of robbery or attempted robbery").[15]

The jury's third option of convicting the defendants of a Section 846 drug conspiracy means that it will not confront the all-or-nothing choice between conviction of a capital offense and acquittal. This eliminates the perceived unreliability of the guilt determination which formed the basis of the concerns which lie at the core of *Beck.*

Although the defendants may not benefit from an instruction on a lesser included *homicide* offense, *Schad* teaches that the constitution does not entitle them to instructions on every possible lesser included offense. Here, as was the case in *Schad,* it defies logic to believe that the jury, convinced that the defendants committed serious crimes, but not the alleged intentional killing, would convict the defendants for the killing rather than for the underlying drug conspiracy. Put differently, in this case, the presence of a third option sufficiently preserves the reliability of the guilt determination by eliminating the condemned all-or-nothing choice. *Beck* requires no more. *See Terry v. Petsock,* 974 F.2d 372, 378–79 (3rd Cir.1992) (finding that jury did not face all-or-nothing choice between capital murder and innocence even though trial court did not instruct the jury on lesser included offenses because, in proving that defendant committed "assault by a life prisoner," the jury became aware that he was already serving a life sentence; the jury also had the option of convicting on several serious non-capital offenses), *cert. denied,* 507 U.S. 940, 113 S.Ct. 1338, 122 L.Ed.2d 722 (1993);[16] see *also Villafuerte v. Stewart,* 111 F.3d 616, 623 (9th Cir.1997) (where defendant was indicted for theft, kidnaping, first-degree murder and was given instructions which permitted verdicts on murder, kidnapping (dangerous and nondangerous), and theft, "the all-or-nothing situation found intolerable in *Beck* was not present.").

b. There is No All–or–Nothing Choice Between Capital Murder and Innocence

Neither does this case involve the second concern articulated in *Beck,* which was that "the apparently mandatory nature of the death penalty [at issue there] may encourage it [the jury] to acquit for an equally impermissible reason—that, whatever his crime, the defendant does not deserve death." In other words, this case does not present the jury with the all-or-nothing choice between *capital murder* and innocence. *See Schad,* 501 U.S. at 646–47, 111 S.Ct. at 2504–05 (quoting *Spaziano,* 468 U.S. at 455, 104 S.Ct. at 3159–60).

Although the Supreme Court did not define the term "capital murder" in *Schad* or *Spaziano,* it may be interpreted in one of two manners. The Court may have meant "capital murder" to describe the precise situation presented in *Beck:* conviction of an offense, when the jury believes conviction subjects the defendant to a mandatory, irrevocable death sentence. On the other hand, the Court may have meant "capital murder" to refer to any offense which is eligible for imposition of the death penalty. *See Rembert v. Dugger,* 842 F.2d 301, 303 (11th Cir. 1988) ("*Beck* is unequivocal in setting forth . . . that as long as there is a possibility of a death sentence, a defendant has a constitutional right to the relevant lesser included instruction."), *cert. denied,* 488 U.S. 969, 109 S.Ct. 500, 102 L.Ed.2d 536 (1988).

*Beck's* progeny provides little support for limiting *Beck* to the precise death penalty procedures presented to the Supreme Court in that case, as the Government has suggest-

**15.** In fact, this case presents the obverse situation as that involved in *Schad,* wherein, the trial court instructed the jury on second degree murder, but not on robbery, as a lesser included offense of robbery murder. Here, the jury cannot be instructed on the lesser included offense instruction of second degree murder (or voluntary manslaughter) because no such offense exists; however, the jury will be instructed on the drug conspiracy. *c.f. McCullah,* 76 F.3d at 1104–05 (finding that Section 846 drug conspiracy is not a lesser included offense to capital murder under Section 848(e), but if the offenses are duplicative, Congress has authorized cumulative punishments).

**16.** The Third Circuit reserved judgment on whether *Beck* applies when the jury's alternative for conviction involves such a minor offense that its availability does not adequately insure reliability. *Id.* at 380 n. 8.

ed. Indeed, after *Beck,* the Supreme Court examined the principles *Beck* espoused in capital cases which involved statutes that did not seem to suffer from the same flaws as the Alabama statute. *See Schad v. Arizona,* 501 U.S. 624, 629, 111 S.Ct. 2491, 2495–96, 115 L.Ed.2d 555 (1991); *Spaziano v. Florida,* 468 U.S. 447, 451–52, 104 S.Ct. 3154, 3157–58, 82 L.Ed.2d 340 (1984). Neither *Schad* nor *Spaziano* provides any indication that the juries in those cases were lead to believe that a finding of guilt would automatically lead to a sentence of death. Instead, the death penalty procedures there at issue seemed to involve some sort of bifurcated guilt and penalty phases.

Nonetheless, the Government's theory that *Beck* is *sui generis* cannot be automatically ruled out because, in both *Schad* and *Spaziano,* the Supreme Court found that *Beck* did not apply for reasons other than the nature of the statute under which the defendants had been sentenced to death. If, however, *Beck* is not limited to situations in which the jury believes that a death sentence is mandatory and irrevocable following a determination of guilt, as was the case in Alabama, the absence of discussion as to the death penalty procedures involved in *Schad* and *Spaziano* renders it difficult to determine what the Supreme Court intended by describing *Beck* as involving an all-or-nothing choice between innocence and "capital murder."

Without doubt, Section 848 death penalty procedures bear not even a faint resemblance to those involved in *Beck,* and if *Beck* is limited to the Alabama procedures at issue therein, then *Beck 's* principles would not apply to this case or to any prosecution under Section 848. Most notably, Section 848 segregates the penalty phase from the guilt phase. Moreover, the jury, not the judge, will have the ultimate say as to whether the death penalty will be imposed. Furthermore, although the jury will know through voir dire that the death penalty may be an option in the penalty phase, the jury will be instructed that it cannot consider punishment in rendering its verdict on guilt or innocence. Therefore, unlike *Beck,* the jury's guilt verdict will not be distorted by an erroneous belief that it must sentence the defendant to death upon conviction or acquit him entirely. Indeed, here, there exists little danger that irrelevant penalty considerations will infect the jury's innocence-guilt determination. In other words, the "all-or-nothing" choice presented to the jury in *Beck* simply is not implicated by Section 848(e)(1)(A).[17]

Assuming, however, that by "capital murder" the Supreme Court meant capital eligible offenses, this case still does not present the jury with the all-or-nothing choice between conviction of *capital murder* (a capital eligible offense) and innocence because, as explained below, the Section 848(e)(1)(A) offense is not capital eligible merely upon conviction, but only becomes so after the jury makes certain required statutory findings in the penalty phase.

Specifically, although Section 848(e)(1)(A) narrows the class of eligible defendants in the guilt phase (by limiting conviction to persons who intentionally kill, counsel, command, procure or cause an intentional killing in furtherance or while engaged in a CCE or while engaged in specified drug crimes), further narrowing of eligibility for the death penalty occurs at the penalty phase. *See United States v. DesAnges,* 921 F.Supp. 349, 355–56 (W.D.Va.1996); *McCullah,* 76 F.3d at 1109; *Chandler,* 996 F.2d at 1093. Indeed, under Section 848, before the jury may even consider nonstatutory aggravating factors and then undertake a balance of the proven aggravating and mitigating factors to determine the appropriateness of a death sentence, the jury must first find, at the penalty phase, that the defendant committed the crime of conviction with one of the Section 848(n)(1) mental states.[18]

17. *See Wiggerfall v. Jones,* 918 F.2d 1544 (11th Cir.1990) (distinguishing *Rembert v. Dugger,* 842 F.2d 301, which held that the failure to give a lesser included offense instruction was harmless error where the jury had imposed a life sentence, on the basis that in *Rembert* unlike in *Wiggerfall,* the jury had the power to recommend a sentence, which "served at least some of the interests of the third option, the absence of which was critical to *Beck* ").

18. Specifically, Section 848(n) of Title 21, United States Code provides:

> If the defendant is found guilty of or pleads guilty to an offense under subsection (e) of this

This separate finding of intent, which may mirror the guilt phase mens rea finding,[19] also serves another function. As stated by the Fourth Circuit in *United States v. Tipton,* 90 F.3d 861, 898 (4th Cir.1996),

> The four (n)(1) circumstances ... essentially replicate the required mental states for constitutional imposition of the death penalty, but in doing so they reflect four distinctly different levels of moral culpability, ranging downward from direct "intentional killing," (A), to intentionally engaging in conduct with known potential for causing death that did in fact cause it, (D) ... In requiring the jury at sentencing ... to address and make findings respecting these different circumstances—some of which are necessarily implicit in any guilty verdict on a § 848(e)(1)(A) murder count—§ 848(n)(1) provides precisely the constitutionally required, principled basis for further distinguishing between those murderers thought deserving of death and those not thought to be ... They might well, for example, guide a discretionary decision to recommend death for one defendant found guilty under Section 848(e) because he 'intentionally killed,' i.e., was a direct executioner, but not to recommend death for another defendant also found guilty not because he had been the actual executioner of a victim but because he had 'caused' or 'procured' his intentional killing by another and thereby had intentionally engaged in conduct intending that the victim be killed.

*Id.* at 898. In addition to the required (n)(1) finding, before the jury may consider whether the aggravating and mitigating circumstances warrant a sentence of death, the jury also must find the existence of one or more of the statutory aggravating factors listed in Section 848(n)(2) through (12).

If the jury does not find one of the (n)(1) factors and/or it does not find one of the (n)(2) through (12) factors, under no set of circumstances can a sentence of death be imposed.[20] Therefore, here, the death sentence may never be imposed, and indeed, the jury may not even consider non-statutory aggravating factors or weigh the aggravating and mitigating factors to determine whether a sentence of death is warranted, until the penalty phase, and only then, after finding the required statutory aggravating factors.[21]

section, the following aggravating factors are the only aggravating factors that shall be considered, unless notice of additional aggravating factors is provided under subsection (h)(1)(B) of this section—

(1) The defendant—

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury which resulted in the death of the victim;

(C) intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim;

(D) intentionally engaged in conduct which—

(i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and

(ii) resulted in the death of the victim.

19. Section 848(e)(1)(A) proscribes "intentional killing" and one of the Section (n)(1) mental state factors is that the "defendant intentionally killed the victim." *See DesAnges,* 921 F.Supp. at 355 (assuming that "statutory factor Section 848(n)(1) and mens rea element" of Section 848(e) are duplicative); *McCullah,* 76 F.3d at 1109 (stating that, "[w]hile the factors in Section 848(n)(1) may mirror the intent element found at the guilt phase, this is permissible under" *Lowenfield v. Phelps,* 484 U.S. 231, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988)). *Lowenfield* held that it is not constitutionally infirm for an aggravating factor to duplicate an element of an offense where the "narrowing function" is performed at the guilt phase.

20. Section 848(k) provides: "[i]f one of the aggravating factors set forth in subsection (n)(1) of this section and another of the aggravating factors set forth in paragraphs (2) through (12) of subsection (n) of this section is found to exist, a special finding identifying any other aggravating factor for which notice has been provided under subsection (h)(1)(B) of this section may be returned ... If an aggravating factor set forth in subsection (n)(1) of this section is not found to exist or an aggravating factor set forth in subsection (n)(1) of this section is found to exist but no other aggravating factor set forth in subsection (n) of this section is found to exist, the court shall impose a sentence, other than death, authorized by law." 21 U.S.C. § 848(k).

21. This aspect of Section 848 differs from the Alabama statute at issue in *Beck.* Pursuant to that statute, if the jury found that Beck committed the crime of robbery with the capital aggravating factor of intent, the guilt verdict had the effect of fixing punishment at death, even though the judge could choose to impose life after a hearing on aggravating and mitigating factors. *See Beck,* 447 U.S. at 627–28 n. 1–3, 100 S.Ct. at 2384–85 n. 1–3; *Wiggerfall,* 918 F.2d at 1545–46.

Consequently, a Section 848(e)(1)(A) offense is not a death eligible offense merely by virtue of conviction of the offense for which the death penalty ultimately may be imposed.[22] Therefore, the jury here will not be confronted with the all-or-nothing choice between *conviction* of *capital murder* and innocence.[23]

In sum, whether the Supreme Court meant "capital murder" to refer to the *sui generis* Alabama statute, or whether the Supreme Court meant "capital murder" to refer to capital eligible crimes, need not be resolved here. In either event, this case does not present the jury with the impermissible all-or-nothing choice between conviction of capital murder or acquittal which would undermine the reliability of the guilt verdict, and thereby, be condemned by *Beck* and its progeny.

**2. Beck Does Not Require that Congress May Enact Only Those Capital Offenses which Contain Lesser Included Offenses**

Even if Section 848(e)(1)(A) presents the all-or-nothing choice between capital murder and innocence, the statute is still constitutional as applied. *Beck* does not mean, and the Supreme Court has never construed the opinion to mean, that a legislative body, here, Congress, only may create those capital offenses which contain lesser included homicide offenses. Although there is a circuit split on the question, the Court agrees with the decisions, which have declined to extend *Beck* to such limits.

The Supreme Court decisions subsequent to *Beck* have not dispositively addressed whether *Beck* requires death penalty statutes to contain lesser included offenses, or whether *Beck* means only that, if lesser included offenses exist, the jury should be instructed as to those offenses if supported by the evidence in a particular case. The Supreme Court, however, has demonstrated a tendency to restrict, rather than to extend *Beck*, and several Justices have hinted that Beck would not apply where no lesser included offenses exist by law.

For instance, in *Spaziano*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340, the defendant was tried for first degree murder, a capital offense in Florida. The Supreme Court found that the trial court had not erred in refusing to instruct the jury on lesser included non-capital offenses, where the defendant had been informed that the trial court would instruct the jury on those offenses if the defendant would waive the expired statute of limitations, and where the defendant knowingly refused a waiver.

In so holding, the Supreme Court reaffirmed its "commitment to the demands of reliability in decisions involving death and to the defendant's right to the benefit of a lesser included offense instruction that may reduce the risk of unwarranted capital convictions." *Id.* at 456, 104 S.Ct. at 3160. Nevertheless, in *Spaziano*, the Supreme Court found that

22. In this respect, at the guilt phase, this case is no different than a non-capital case. And because the Supreme Court expressly reserved judgment on the applicability of *Beck* to non-capital cases, the decision here is not foreclosed. Of course, here, as in *Beck*, the death penalty ultimately may be imposed, and the Court emphasized in *Beck* that an unreliable guilt verdict cannot be tolerated when death is the ultimate sanction. However, to the extent that the Court's reasoning was based on a concern that an unreliable guilt verdict could result in an unwarranted imposition of a death sentence, that concern is not implicated here, where the jury has *absolute control* over imposing a death sentence.

23. *Compare, Rembert v. Dugger*, 842 F.2d 301, 303 (11th Cir.1988) (finding *Beck* at issue whenever a possibility of a death sentence exists, but that failure to instruct jury on lesser included offenses was rendered harmless by jury's imposition of life sentence); *Wiggerfall v. Jones*, 918 F.2d 1544 (11th Cir.1990) (finding constitutional error in failing to instruct on lesser included offenses when jury convicted defendant under belief that death penalty was mandatory upon conviction, even though defendant was sentenced to life, *Rembert* was distinguishable because that jury could express a meaningful opinion on the issue of whether the defendant would receive the death sentence as a matter distinct from his guilt of the substantive offense); *Trujillo v. Sullivan*, 815 F.2d 597 (10th Cir.1987) (finding that failure to give lesser included offense instructions was not constitutionally erroneous and therefore could not be reviewed on habeas, where, although the death penalty was sought it was not imposed), *cert. denied*, 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987).

*Beck* did not "require that the jury be tricked into believing that it had a choice of crimes for which to find the defendant guilty, if in reality, there is no choice." *Id.*

A plurality of the Supreme Court then explained that, if the jury is not to be tricked, it remained to be determined whether *Beck* required that a lesser included offense instruction be given, thereby forcing the defendant to waive the expired statute of limitations, or whether the defendant should be given the choice of either waiving the statute of limitations and receiving the lesser included offense instruction, or asserting the statute of limitations. The better option, the plurality concluded, was to give the defendant the choice.

In their concurring opinion in *Spaziano*, Justices White and Rehnquist disagreed with the scope of the plurality opinion. Those Justices did not join the view that *Beck* requires "a state court in the trial of a capital case to permit the defendant to waive the statute of limitations and to give a lesser included offense instruction as to an offense that would otherwise be barred." *Id.* at 467, 104 S.Ct. at 3166.

Unlike *Spaziano*, the defendants in this case have not requested that the Court give a lesser included offense instruction on an offense which does not exist. Rather, the defendants have posited only that the absence of a lesser included homicide offense renders Section 848(e)(1)(A) unconstitutional because the Court cannot give the jury those options for conviction. In effect, the defendants contend that *Beck* means that the Constitution requires every capital offense to contain lesser included homicide offenses.

The plurality opinion in *Spaziano* avoided that question by opting to give defendants a choice, rather than requiring them to waive the statute of limitations, which implicitly would have meant that *Beck* requires lesser included offenses to exist. Although the concurring Justices described this view as *dicta*, the cryptic nature of the concurring opinion renders it difficult to say for certain, in what respect the concurring Justices disagreed with the plurality.

In *Schad*, the Court provided no further guidance on interpreting the scope of *Spaziano*. The dissenting Justices in *Schad*, however, cast some, but not much, light on the question. In particular, in response to the state's contention that felony murder had no lesser included offense, the dissenting Justices in *Schad* remarked that, "[i]t is true that the rule in *Beck* only applies *if there is in fact a lesser included offense to that with which the defendant is charged*, for 'where no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process.'" *Schad*, 501 U.S. at 661, 111 S.Ct. at 2512 (White, J. dissenting, joined by Marshall, J., Blackmun, J., Stevens, J.) (emphasis added).

It is unclear from this statement, whether the dissenting Justices in *Schad* meant that offenses which have no lesser included offense fall outside the *Beck* rule. The Supreme Court was not presented with that question because a lesser included offense instruction had been given in *Schad*. Whatever the dissenting Justices meant, their statement is subject to their later qualification that the Constitution limits the deference that should be afforded to a legislature's definition of a crime. *Id.* at 661–62, 111 S.Ct. at 2512–13. Hence, the Supreme Court's decisions, although tending to restrict the scope of *Beck*, leave room for doubt as to its meaning in circumstances other than those which mirror the facts in *Beck*, wherein the lesser included offense existed as a matter of general state law but where the jury was prohibited from considering the lesser included offenses.

The Courts of Appeals have divided over the issue of whether *Beck* applies to capital offenses, which under state law, contain no lesser included offenses. The Ninth Circuit relied upon *Spaziano*, with no further analysis, to find that a state trial court had not erred in failing to instruct the jury on a lesser included offense to felony murder because Arizona recognized no lesser included offense to that crime. *Greenawalt v. Ricketts*, 943 F.2d 1020, 1029 (9th Cir.1991), *reh'g denied*, 961 F.2d 1457 (1992), *cert. denied*, 506 U.S. 888, 113 S.Ct. 252, 121 L.Ed.2d 184

(1992); *see also Hill v. Kemp,* 833 F.2d 927, 929 (11th Cir.1987) (where defendant was convicted for murder and forcible rape, finding no error in court's refusal to instruct on statutory rape, where Georgia Supreme Court had held that statutory rape was not a lesser included offense of forcible rape; "[a] federal court must follow a state court's decision as to whether a defendant could be convicted legally of a lesser included offense in deciding whether the failure to give a lesser included offense charge violates the Constitution").

The Eighth Circuit, however, took issue with the Ninth Circuit on this question in *Reeves v. Hopkins,* 102 F.3d 977 (8th Cir. 1996), *petition for cert. filed,* 65 U.S.L.W. 3741 (1997), No. 96–1693. On federal habeas review of a state conviction, the Court of Appeals, in *Reeves,* ruled that the state trial court had violated *Beck* by refusing to instruct the jury on second degree murder and manslaughter when the jury had been instructed on two counts of first degree felony murder, killing during the course of first degree sexual assault or attempted first degree sexual assault. In so holding, the Eighth Circuit rejected the state's argument that *Beck* did not apply because the Nebraska Supreme Court had determined that no lesser included offense to felony murder existed. The Eighth Circuit held:

> The State's position would say in effect that *Beck* means only that a criminal defendant is entitled to instructions on lesser included offenses to which state law says he or she is entitled. But if this were true, then *Beck* itself would have been decided differently. In *Beck,* as in this case, state substantive law specifically prohibited the giving of a lesser included offense instruction. The problem was not merely a trial court's decision not to instruct the jury, nor was it Alabama's definition of lesser included offenses. The unacceptable constitutional dilemma was that state law prohibited instructions on noncapital murder charges in cases where conviction made the defendant death-eligible. The prohibition in *Reeve 's* case is based on the Nebraska Supreme Court's pronouncement of state law, rather than upon a statute. But there is no principled reason to distinguish such a prohibition imposed by the state courts from one imposed by the state legislature.

*Id.* at 982–83. Against that background, the Eighth Circuit explained why it disagreed with the Ninth Circuit's decision in *Greenawalt:*

> The Ninth Circuit in *Greenawalt* cited *Spaziano* to support its conclusion that Arizona's nonrecognition of any lesser included offenses foreclosed a *Beck* claim ... We believe that this reads *Spaziano* much too broadly *Spaziano* does not stand ... for the proposition that state law can foreclose *Beck* claims by declaring that felony murder has no lesser included offenses; this is exactly what the Alabama legislature had done in *Beck,* after all. *Spaziano* stands, rather, for the eminently sound notion that juries should not be mislead into 'convicting' someone of a charge for which he or she cannot be convicted. there is no question of such trickery in this case. *Reeves* could have been convicted and sentenced for either second degree murder or manslaughter.

*Id.* at 983–84. After the Eighth Circuit decided *Reeves,* Greenawalt urged the Ninth Circuit to recall its decision, denying his first federal petition, based on the view taken in *Reeves* of *Beck* and *Spaziano. Greenawalt v. Stewart,* 105 F.3d 1268 (9th Cir.1997), *cert. denied,* — U.S. ——, 117 S.Ct. 794, 136 L.Ed.2d 735 (1997). The Ninth Circuit explained the difficult standards that must be shown to recall a mandate of a prior case and declined to recall its mandate, stating only that:

> Although the issue may be reasonably disputed, *Reeves* does not persuade us that we erroneously resolved Greenawalt's *Beck* claim. Greenawalt has not demonstrated the required exceptional circumstance. Greenawalt, if he chooses to do so, may call this issue to the attention of the Supreme Court, where intercircuit disputes can be settled.

*Id.* at 1276.

Although *Reeves* provides a more complete analysis of the issue than *Greenawalt, Reeves* is not persuasive. *Reeves,* of course, correct-

ly interpreted *Spaziano 's* narrow holding that juries should not be mislead into convicting someone of a charge for which, as a matter of law, he or she cannot be convicted. However, the rationale of *Spaziano,* as earlier discussed, reflects reluctance on the part of the Supreme Court to extend *Beck* to cases in which lesser included offenses do not exist, a point which *Reeves* did not consider.

Nor is the Court persuaded that the Alabama law in *Beck,* which prohibited instructing juries in capital cases as to lesser included offenses which existed generally under state law, may be equated with the statute at issue here which, by legislative fiat, contains no lesser included offenses. For instance, in *Beck,* the defendant was charged with intentional killing during the course of a robbery. Felony murder was a lesser included offense of that capital crime which actually was provided for generally under Alabama law. The only reason the jury did not consider the generally applicable felony murder offense in *Beck 's* case was that Alabama law prohibited *instruction* on that option in capital cases without regard to whether the evidence would permit such an instruction. That situation is far different from the one presented here.

Here, although lesser included homicide offenses to Section 848(e)(1)(A) conceivably could exist, Congress elected not to bring them within Section 848's statutory scheme. Hence, no lesser included homicide offenses exist. Consequently, the difference, between this case and *Beck* is that in *Beck,* the defendant sought a rule, pursuant to which, defendants may not be precluded from benefitting from an instruction on an offense which had either been created by the legislature or which existed under the common law. Here, however, the defendants seek a rule, pursuant to which, the judiciary would circumscribe legislative discretion in the *creation of offenses* by requiring the legislature to create alternatives for conviction.

Put differently, the defendants have requested the Court here to mandate that Congress may only enact capital offenses which contain lesser included homicide offenses. This request, which is the necessary result of *Reeves,* must fail because it is inconsistent with the concepts of limited federal jurisdiction and separation of powers. Indeed, there is no warrant in the Constitution, a document which rests on principles of federalism, for requiring that, once Congress chooses to exert jurisdiction over the most serious capital offenses with a federal nexus, it must also exert jurisdiction over all other lesser included offenses.

The final reason for rejecting the *Reeves* analysis is that the Supreme Court, in at least two instances, has recognized that a jury may convict a defendant for a capital offense, even though the jury has not had the option of convicting on a lesser included offense: (1) if the facts do not support a lesser included offense; and (2) if the statute of limitations bar an offense, and the defendant chooses not to waive the bar.

In those two instances, then, the absence of a lesser included offense could still jeopardize the reliability of the guilt verdict, under *Beck 's* rationale, because the jury may desire to convict the defendant of the capital offense rather than set him free, even if the evidence does not so warrant. Nevertheless, under those circumstances, the Supreme Court has not found a verdict of guilt too unreliable to support the imposition of the death penalty. The rule in *Beck,* therefore, cannot be as rigid as the defendants profess, and the Court, here, finds it consistent with Supreme Court jurisprudence to carve a third exception to the *Beck* rule, where no lesser included offenses exist as a matter of law, because for instance, the Court has no jurisdiction over such offenses. In that situation, the rule of *Beck* does not preclude the prosecution here presented.

## II. Section 848(e)(1)(A) Does Not Violate the Equal Protection Clause

The defendants also have claimed that the failure to include lesser homicide offenses in Section 848(e)(1)(A) violates the Equal Protection Clause of the Fourteenth Amendment because, in drafting the statute, Congress impermissibly created a classification which affects a fundamental right, and that classification must fail under a strict scrutiny analysis.

The first problem with the defendants' theory is that not every federal death eligible offense contains lesser included homicide offenses as the defendants suggest.[24] Therefore, there is no evidence that drug defendants have been singled out. The second problem with their theory arises from the fact that the Court has found that no fundamental right is violated by the failure of Section 848(e)(1)(A) to contain lesser included homicide offenses. The defendants have not alleged that the classification was made along suspect lines, and therefore, the equal protection analysis is not governed by strict scrutiny, but rather by the rational basis test. *Heller v. Doe,* 509 U.S. 312, 319–20, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993) ("a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.")

Under rational-basis review, "a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose ... Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification.. Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (citations and quotations omitted).

Here, the eradication of drug trafficking, a serious offense which undeniably has taken a toll on American society, constitutes a legitimate federal purpose when the dealing affects interstate commerce. Moreover, violence, including murder, in pursuit of drug trafficking and continuing criminal enterprises, indisputably poses a problem requiring a federal response. In furtherance of its purpose to eradicate this scourge, Congress rationally could have decided to punish any person who "intentionally killed" in furtherance of a serious drug crime, as specified in Section 848(e)(1)(A). Congress also could rationally and reasonably have decided that, so long as a murder is in furtherance of some serious illicit activity, such as drug dealing, the facts, which might otherwise make an "intentional killing" merit a second degree murder or manslaughter instruction, should be considered by the jury in the penalty phase, but not in the guilt phase. Finally, the fact that Congress could have created lesser included homicide offenses to Section 848(e)(1)(A) is irrelevant under rational-basis review, where it is not required that Congress "have chosen the least restrictive means of achieving its legislative end." *Id.* at 330, 113 S.Ct. at 2648. Hence, Section 848(e)(1)(A) is reasonable, and it rationally relates to a legitimate purpose. Therefore, it does not violate the Equal Protection Clause.

## III. Conclusion

In sum, Section 848(e)(1)(A) is constitutional on its face and as-applied because: (1) this case does not present the all-or-nothing choice condemned by *Beck* and its progeny; (2) *Beck* does not mean that Congress can create only those capital crimes which contain lesser included homicide offenses; and (3) it does not violate the Equal Protection Clause. The defendants' motion is therefore denied.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

24. None of the following statutes contain lesser included homicide offenses, such as second degree murder or voluntary manslaughter: 18 U.S.C. § 2381 (treason), 18 U.S.C. § 794 (espionage); 18 U.S.C. § 241 (conspiracy against rights were death results); 18 U.S.C. § 242 (deprivation of rights under color of law); 18 U.S.C. § 1716 (injuries articles as non-mailable); 18 U.S.C. § 1959 (violent crimes in aid of racketeering); 18 U.S.C. § 2280 (violence against maritime navigation) 18 U.S.C. § 2332a (use of weapons of mass destruction); 18 U.S.C. § 2340A (torture).